THE HONORABLE ROSEMARY M. COLLYER, UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR-01:06-97-01 – RMC |
| ) | |
| CAMILLE YOUNG, ) | Sentencing: 4 May 2007 |
| ) | |
| Defendant. ) | |

FILED
APR 3 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW the Defendant, Camille Young, by and through counsel, and hereby submits her position with respect to sentencing factors in this case.

A.  Ms. Young Seeks a Downward Departure in Criminal History Category

The Federal Sentencing Guidelines ("Guidelines") provide for a downward departure if "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes" (§4A1.3(b)). In the instant matter, Ms. Young's Criminal History Category has been raised to a Level III based on two (2) different matters. The first matter concerns a charge of concealing a deadly weapon in Anne Arundel County, Maryland. The weapon in question was brass knuckles. Ms. Young was traveling at the time and authorities seized the brass knuckles from her purse where she had mistakenly left them. The disposition, as reflected in the Presentence Investigation Report ("PSR"), was unsupervised probation before judgment, a fine of $75 in addition to having to pay court costs. On 19 July 2006 Ms. Young's probation was terminated and no conviction was entered.

RECEIVED
APR 3 0 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

This misdemeanor charge, which was ultimately dismissed due to Ms. Young's compliance with the requirements of unsupervised probation, also over-represents the seriousness of Ms. Young's record because it adds an additional two (2) points to the criminal history computation due to the date of offense occurring within the three (3) year time period alleged in the instant matter.

The second matter concerns an 11 June 1998 report of False Swearing. Although Ms. Young disputes the facts as reported in the PSR, the point that counsel would like to address is that this matter was handled internally by the Department of the Army. No convictions resulted from the inquiry, and although there was a punitive sanction imposed, it did not result in a conviction. Moreover, the U.S.S.G. § 4A1.2 (g) specifies that such sentences are counted "if imposed by a general or special court martial. Sentences imposed by a summary court martial or Article 16 proceeding are not counted." In the instant matter, no evidence has been described that the report of False Swearing resulted in a general or special court martial. Accordingly, the reference to this event cannot be counted as an adjustment to the criminal history.

If the Court were to find that the Department of the Army matter lacks any specific reference to a general or special court martial, then the resulting criminal history reverts back to a Category II. Should the Court further find that the event in Maryland substantially over-represents the seriousness of Ms. Young's criminal history or the likelihood that she will commit other crimes, a downward departure may be warranted. In support of this downward departure request, Counsel reminds the Court that the Maryland charge included simply unsupervised probation, which was completed successfully, resulting the case being dismissed. Despite the end result in the misdemeanor case, a dismissal after complete requirement with probationary

expectations, the small matter has now developed into a significant factor in Ms. Young's Sentencing Guidelines Criminal History computation.

B. <u>Base Level Offense Determination Under the U.S.S.G.</u>

The PSR reflects the U.S.S.G. §2G1.1(a) base level offense of fourteen (14). While Counsel does not disagree with this calculation, Counsel does believe it is important to note that the plea agreement in this matter, both written letter form, and orally on the record, reflect an agreement by the United States that the base level of the offense would be seven (7) (page 2, paragraph 2). Counsel regretfully informs the Court that this plea agreement was brokered and discussed by Ms. Young's previous counsel and that current Counsel relied upon the calculation without reviewing the determination for accuracy. Regardless of current Counsel's error, the principal concern is that Ms. Young had differing expectations when she entered the Plea Agreement. The original Plea Agreement specifically states that a five (5) level enhancement would be applied for more than five (5) victims (2G1.1(d)(1) and 3D1.3 and that a three (3) level enhancement would be applied for aggravating role in the offense (3B.1.1(b)) of the U.S.S.G. Counsel stands by this agreement.

Counsel is of the opinion, however, that because of the errors of both the United States and previous counsel in determining the level of offense, Ms. Young's reliance on the specific description of the base level offense of seven (7) is not without merit. The manner in which to address this error is, however, unclear. One option for the Court would be to simply complete the sentencing in the current posture of the case. Another option for the Court would be to allow Ms. Young to withdraw her guilty plea based on her misunderstanding of the agreement to her detriment. A final option for the Court, and the option that Counsel endorses, is the adoption of

the recommendation of the Probation Officer that a downward departure to Zone B would sufficiently allow the Court to fashion a sentence for Ms. Young that is not only punitive in nature, but that compensates Ms. Young's reliance on the previously miscalculated base level offense in conjunction with the sentencing factors set forth in 18 U.S.C. §3553.

C. The Sentencing Guidelines and *Booker*

After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines became simply one of many factors for the Court to consider when arriving at an appropriate sentence. Moreover, although a sentence within the guideline range is "presumptively reasonable" for the purpose of appellate review, a "sentence falling outside of the properly calculated Guidelines range is not *ipso facto* unreasonable." *United States v. Green*, 436 F.3d 449, 458 (4th Cir. 2006). In *Green* the United States Court of Appeals for the Fourth Circuit stated that

> [A]fter all proper considerations have been afforded, the overarching standard of review for unreasonableness will not depend on whether we agree with the particular sentence selected, . . . but whether the sentence was selected pursuant to a reasoned process in accordance with law, in which the court did not give excessive weight to any relevant factor, and which effected a fair and just result in light of the relevant facts and law.

*United States v. Green*, 436 F.3d at 458 (citation omitted).

The United States has taken considerable effort in its Sentencing Memorandum to buttress the guidelines as the appropriate benchmark from which to begin the ascertainment of sentence determination. It is no secret, however, that for years prior to the decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the Federal Judiciary has expressed frustration with the lack of discretion permitted in sentencing defendants. The *Booker* decision, in conjunction with

*Blakely v. Washington*, 124 S.Ct. 2531 (2004), opened up the Court's proper use of discretion to evaluate the facts of each case independently, using the factors described in 18 U.S.C. 3553. Thus, the sentencing guidelines became one of many factors that the Court must consider before imposing a sentence.

The United States writes in its Sentencing Memorandum in support of the continued use of the guidelines as the benchmark for sentencing that the Commission produced a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases." Counsel strongly disagrees with this statement and refers to examples that support the inaccuracy of the Commissions results: Juvenile offenses are considered when calculating the criminal history of a defendant; suspended imposition of sentences that resulted in the ultimate dismissal of cases is considered when calculating the criminal history of a defendant; a defendant may be labeled a career offender despite the predicate offenses occurring while the defendant was a juvenile; sentencing for crack cocaine, as opposed to powder cocaine, substantially increases a defendant's period of incarceration simply because of the drug was cooked into rocks; the age of a defendant is "not ordinarily relevant in determining whether a departure is warranted"; educational and vocational skills of a defendant are not "ordinarily relevant in determining whether a departure is warranted"; the mental and emotional conditions of the defendant are "not ordinarily relevant in determining whether a departure is warranted"; the physical condition or appearance of the defendant, including physique, is not "ordinarily relevant in determining whether a departure may be warranted"; the employment record of the defendant is "not ordinarily relevant in determining whether a departure is warranted"; family ties and responsibilities are "not ordinarily relevant in

determining whether a departure is warranted". The list of factors that the Commission has determined irrelevant in determining the sentence for a particular individual can be further commented upon, but Counsel believes that the point has been made that the previously relied upon "yardstick" produced by the Commission is precisely the basis for the United States Supreme Court's decision in *Booker*. Regardless of whether the elected officials in Congress sought to provide for fairness and consistency for similarly situated defendants, the attempt to construct a numerical rating system failed because each individual defendant comes before the Court with a unique set of circumstances that cannot, and should not, be case aside for the ideal of sentencing consistency.

### D. 18 U.S.C. § 3553 Factors

In considering the Defendant's criminal history, counsel again refers to the arguments mentioned above. 18 U.S.C. § 3553 (a)(2)(D) requires that the Court consider the need for the sentence imposed "to provide the defendant with needed . . . medical care." As stated in the PSR, Ms. Young has been physically and sexually abused all of her life. Ms. Young has been hospitalized on more than one occasion for depression, suicidal ideations (that her children would be better off without her) and posttraumatic stress disorder. Potent medications have been prescribed for Ms. Young's mental condition. In short, Ms. Young has struggled with major mental health problems for her entire life. Medical care provided in a Federal Penitentiary is not always consistent and may not be successful in the case of Ms. Young.

18 U.S.C. § 3553 (a)(6) addresses the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." While not precisely on point with this issue, Counsel feels compelled to mention that the man identified

in Court documents simply as "Individual #1" remains, to this date, uncharged for his criminal conduct relating to the instant matter. Individual #1 was in an abusive relationship with Ms. Young and ultimately directed the formation of the prostitution operation. Individual #1 had equal access to the bank accounts of Vanessa Dash Enterprises and is the individual who withdrew most of the funds alleged in the PSR. At this point in time, Ms. Young does not have the ability to pay her legal bills, much less access to over $600,000.

When the search warrant was conducted on Ms. Young's townhouse, Ms. Young waived her Miranda rights and spoke extensively to agents about Individual #1. Due to Ms. Young's immediate cessation of the business the word got out on the street that Ms. Young was in serious trouble and not to be trusted by other individuals in the business. Indeed, one individual, a photographer well established in the business, was subpoened before the Grand Jury to provide testimony about Ms. Young. The unfortunate handling of Ms. Young's initial contact with federal authorities left her in a position where, despite her attempts, her cooperation was of little or no consequence. The United States has not filed a Rule 5K1.1 Motion in this matter and the likelihood of a Rule 35 Motion is doubtful. Absent information to which Counsel is not privy, Individual #1 appears to be in a position to walk away from his involvement with little or no consequences.

18 U.S.C. §3553(a)(1) provides for the Court to consider the "nature and circumstances of the offense and the history and characteristics of the defendant". The case involves an organization that was set up to provide prostitution services in return for substantial fees. The history and characteristics of Ms. Young have been articulated very well in the PSR. Ms. Young has three children, DeAndre (age 13), Darianne (age 11), and Layla (age 1 month).

DeAndre has mild-to-moderate autism, Darianne has epilepsy, and Layla appears to be in good health. The most heart-breaking aspect of Ms. Young being given an active prison sentence is that all three children will be placed in the foster care system. Ms. Young's family has refused to offer any support and will not agree to care for the children should Ms. Young be incarcerated.

Ms. Young is currently employed with the Coca Cola Company and has already received a promotion in her short tenure at the position. The life that she is capable of leading is established and a prison sentence will terminate all of the work that she has been able to accomplish since she was charged with these two counts. The goals of 18 U.S.C. §3553(a)(2)(B) and (C) are already in place. She has removed herself completely from prostitution business and the likelihood of incarceration and the destruction of her family provide adequate deterrence for future criminal conduct and also protects the public from further criminal actions by Ms. Young.

The need for the sentence to reflect the seriousness of the offense and promote respect for the law and to provide just punishment for the offense (18 U.S.C. §3553(a)(2)(A) can be accomplished in a manner other than a prison sentence. Ms. Young's role in the offense and her involvement with Individual #1 was brought about by her inability to assert herself and her lack of any analysis of her continuing pattern to engage in abusive, manipulative relationships. Home detention as an alternative to active incarceration, reflects not only the seriousness of the crime, but also provides just punishment for her offenses when considered along with all of the other factors enumerated under 18 U.S.C. §3553.

E. Conclusion

For all of the reasons described in this Sentencing Memorandum, Ms. Young respectfully requests the Court to adopt the recommendation of Probation Officer Elizabeth Suarez, set forth on page 23, paragraph 118 of the Presentence Investigation Report. Attachments of pictures of Ms. Young's children are included.

                                                                       Respectfully submitted,

                                                                       CAMILLE YOUNG
                                                                       By counsel

The Gordon Law Firm, P.C.

By: _____
T. Scott Brisendine, DC Bar #447440
10509 Judicial Drive, Suite 102
Fairfax, VA 22030
703-218-8416
703-359-8453 Fax

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and accurate copy of the foregoing Defendant's Sentencing Position was hand-delivered this 30th day of April 2007 to Julieanne Himelstein, Assistant United States Attorney and Elizabeth Suarez, Probation Officer.

                                                                  _____
                                                                     T. Scott Brisendine