UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>)<br>v.   )<br>)<br>)<br>CAMILLE YOUNG, )<br>)<br>Defendant. )<br>) | Criminal Action No. 06-97 (RMC)<br><br>FILED<br>MAY 2 3 2007<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

SENTENCING MEMORANDUM

Defendant Camille Young appeared for sentencing on May 4, 2007, after she entered guilty pleas to two counts of an Information. Count One charged Ms. Young with conspiracy to transport women to engage in prostitution in violation of 18 U.S.C. § 371 and Count Two charged her with money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(1)(B)(i). The Court imposed a sentence that departed from the U.S. Sentencing Guidelines ("Guidelines") pursuant to §5H1.6. This memorandum explains the Court's reasoning.

The Pre-sentence Report ("PSR") calculated a base offense level of 14 for Count One with a 3 point adjustment for role in the offense and 5 points added for each of five victims, resulting in a combined adjusted offense level of 22. *See* PSR at 5-6. In considering Count Two, the PSR determined that the base offense level was 22, to which two points were added as a specific offense characteristic, inasmuch as the Defendant was convicted under 18 U.S.C. § 1956. *See* PSR at 6. Thus, Ms. Young's adjusted offense level was 24, from which she received a two-level decrease for acceptance of responsibility, leaving her with a total offense level of 22. *Id.* at 7. However, the plea

agreement between Ms. Young and the United States Attorney was predicated on sentencing at a base offense level of 7. The United States Attorney's Office felt compelled to fulfill the terms of the plea and asked the Court to sentence Ms. Young at a base offense level of 7, with an additional 5 points for the victims and 3 points for leadership role, minus 2 for acceptance of responsibility, resulting in a total offense level of 13. *See* Sentencing Hearing Transcript, May 4, 2007 ("Sent. Tr.") at 1:16-3:14.[1]

The PSR calculated the Defendant's criminal history at category 3, in partial reliance on a charge of "false swearing" when the Defendant was serving in the U.S. Army at Fort Belvoir. *See* PSR at 7-8. Defense counsel objected that the Army discipline did not result from a court martial and should not be counted. *See* Defendant's Sentencing Memorandum ("Def.'s Sent. Mem.") at 2; Sent. Tr. at 4:7-11. The Probation Officer agreed on the record in open court, which thereby reduced Ms. Young's criminal history to a category 2.[2] Sent. Tr. at 4:12-22. As initially and correctly calculated by the PSR, with an adjusted offense level of 22 and a corrected criminal history category of 2, the Guidelines sentence would be between 46 and 57 months. Recognizing the U.S. Attorney's plea agreement, the Guidelines sentence for an adjusted offense level of 13 and a criminal history category of 2 would be between 15 and 21 months. *See* Sent. Tr. at 4:17-5:19.

The Court heard from Ms. Young's counsel, the Assistant United States Attorney,

---

[1] Neither party ordered an official certified copy of the Sentencing Hearing transcript, so the Court is operating from an unofficial copy of the May 4, 2007 hearing transcript.

[2] The probation officer did not oppose counsel's argument that under §4A1.2(g) of the Guidelines the "false swearing" incident should not be counted against Ms. Young because, "Sentences resulting from military offenses are counted if imposed by a general or special court martial. Sentences imposed by a summary court martial or Article 15 proceeding are not counted." *See* Sent. Tr. at 4:12-13; USSG §4A1.2.

and Ms. Young herself and determined that a reasonable sentence would be probation with the condition of home detention as a departure under Guideline §5H1.6, which allows departure for a caretaker who would leave children or others without care.

The nature and circumstances of the offense were a successful prostitution business that operated off an internet website with a fair amount of sophistication. *See* PSR at 3-4. However, the Defendant was sexually abused as a child and was especially vulnerable to victimization herself. *See id.* at 9-15. Indeed, it was a former boyfriend, who already worked in the prostitution business as a pimp and who physically abused her, who persuaded the Defendant to start up the business. *See* Statement of Offense, filed May 19, 2006 [Dkt. #8] at 2; Sent. Tr. at 18:17-19:1. In presiding over other cases involving prostitution, the Court has received expert testimony about how almost all prostitutes were sexually abused as children and how it is the resulting damage to a girl's psyche that results in low self-esteem and makes her an easy prey. Thus, the nature and characteristics of the offense favor incarceration, but the history and characteristics of the Defendant do not.

A sentence must reflect the seriousness of the offense which, in this case, would suggest a sentence at the high end of the range as requested by the Government. The Defendant's own statements to the Court, her immediate contrition and full cooperation with law enforcement upon her arrest, and her efforts to rebuild her life with a new, legal, job at which she has already received a promotion, persuade the Court that incarceration is not necessary to promote her respect for law. A "just sentence" would be a Guidelines sentence at offense level 13 and criminal history category 2, *i.e.*, 15 months. Adequate deterrence would be served with either home detention or incarceration. The record makes it clear that the Defendant needs educational training and mental health treatment, both of which could more effectively be obtained in the community than in

incarceration.

A downward departure into Zone B of the Guidelines would allow a sentence of probation that includes a condition of home detention. *See* USSG §5C1.1(c). The Defendant has three children; the eldest suffers from autism, the second suffers from epilepsy and the third is a newborn infant. *See* Sent. Tr. at 9:1-7. The Defendant's family has abandoned her and refuses to assist. The father of the newborn child is willing to assist the Defendant financially to avoid forfeiture of her home but their relationship is otherwise broken. The Defendant is raising the children entirely on her own. In other words, three children – two with serious medical conditions and one a bare infant – would be forced into the foster child system of the District of Columbia were the Defendant incarcerated.

The application note on Policy Statement §5H1.6, <u>Family Ties and Responsibility</u>, states:

> (B) <u>*Departures Based on Loss of Caretaking or Financial Support.*</u> *– A departure under this policy statement based on the loss of caretaking . . . of defendant's family requires . . . the presence of the following circumstances:*
>
> *(i) The defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking . . . .*
>
> *(ii) The loss of caretaking . . . substantially exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. . . . .*
>
> *(iii) The loss of caretaking . . . is one for which no effective remedial or ameliorative programs reasonably are available, making the defendant's caretaking . . . irreplaceable to the defendant's family.*
>
> *(iv) The departure effectively will address the loss of caretaking . . . .*

USSG § 5H1.6 (application note) (italics in original). This Defendant has two children with serious

medical issues and a newborn infant. There are no family members or friends who would be willing to care for the children during her incarceration and they would be left to the misery of the D.C. foster child system. *See* Sent. Tr. at 19:11-14. Given the Defendant's own victimization; her notable efforts to cooperate with law enforcement; her admirable efforts to regain lawful employment and to continue her education; and the complete family breakdown and distress that a jail sentence would impose on her innocent children, the Court believes that this is the rare case for application of the note to Guideline §5H1.6.

Therefore, the Court sentenced the Defendant to a sentence of probation with a condition of twenty (20) months home confinement with electronic monitoring. While on electronic monitoring, Ms. Young will be provided time for her job and to take care of her children and their schooling and medical needs, as well as her own educational needs and her mental health treatment, which the Court also ordered. *See* Sent. Tr. at 28:7-29:3. The Defendant must provide financial disclosure to the Probation Office. A special assessment fee of $200 is due immediately. In addition, as a condition of probation, the Defendant must tender a check to the United States in the amount of $20,000 as civil forfeiture in lieu of losing her home.

/s/ Rosemary M. Collyer
ROSEMARY M. COLLYER
United States District Judge

DATE: May 22, 2007